

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00561-CV

Noe **GARCIA**, Iris Garcia, and Maxie L. Houser,
Appellants

v.

Gloria **GARCIA**,
Appellee

From the 229th Judicial District Court, Duval County, Texas
Trial Court No. DC-12-335
Honorable Ana Lisa Garza, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Patricia O. Alvarez, Justice
  Luz Elena D. Chapa, Justice
  Jason Pulliam, Justice

Delivered and Filed:  July 1, 2015

AFFIRMED IN PART, REVERSED AND RENDERED IN PART

Noe and Iris Garcia ("the Garcias") and their attorney, Maxie L. Houser, appeal the trial court's judgment, which dismissed the Garcias' claims pursuant to their notice of nonsuit and awarded Gloria Garcia (no relation to Noe and Iris) her expenses and attorney's fees as a sanction against Houser under chapter 10 of the Texas Civil Practice & Remedies Code. We reverse the trial court's award of sanctions and render judgment that Gloria take nothing on her request for sanctions, and we affirm the remainder of the judgment.

## BACKGROUND

Houser agreed to represent the Garcias in a property dispute with Gloria. Houser filed an original petition on behalf of the Garcias and, after Gloria filed special exceptions, Houser filed a signed, amended pleading alleging a trespass to try title claim and alleging, "The [Garcias] own this property in fee simple."

Houser filed numerous motions for continuance and then, the night before trial, filed a notice of nonsuit. Gloria then filed a motion for sanctions under Texas Rule of Civil Procedure 13 and Chapter 10 of the Civil Practice and Remedies Code. The motion alleged, "Plaintiff[s] filed this suit without proof of a good chain of title and with knowledge that [Gloria] possessed the land for an adequate period to establish good limitations title in her name."

At the hearing on Gloria's motion for sanctions, Gloria's counsel clarified the grounds for the motion as follows, "Your Honor, I am not contending here that anything was filed in bad faith. . . . We are not contending anything was filed in bad faith. We are just contending that the records clearly show there's no chain of title." According to the trial court's order, it granted sanctions because "reasonable inquiry by [the Garcias or Houser] would have disclosed that [they] could not show a good chain of title." The final judgment, which dismissed the Garcias' claims without prejudice, stated the sanctions were awarded pursuant to chapter 10 of the Civil Practice & Remedies Code because plaintiffs failed to make reasonable inquiry before filing the trespass to try title suit. The Garcias and Houser filed a notice of appeal. However, the only issue raised on appeal is whether the trial court abused its discretion in awarding sanctions. No issue or point challenging the dismissal is raised.

## SANCTIONS

We review a trial court's award of sanctions for an abuse of discretion. *Herring v. Welborn*, 27 S.W.3d 132, 143 (Tex. App.—San Antonio 2000, pet. denied). When reviewing a trial court's

ruling for an abuse of discretion, we may not substitute our judgment for that of the trial court. *Schlager v. Clements*, 939 S.W.2d 183, 191 (Tex. App.—Houston [14th Dist.] 1996, writ denied). We are limited to determining whether the trial court abused its discretion by acting arbitrarily and unreasonably, without reference to guiding rules or principles, or misapplying the law to the established facts of the case. *Id.* In deciding whether sanctions constitute an abuse of discretion, we examine the entire record. *Herring*, 27 S.W.3d at 143. We review the conflicting evidence in the light most favorable to the trial court's ruling and draw all reasonable inferences in favor of the trial court's judgment. *Id.*

Section 10.001(3) of the Civil Practice & Remedies Code provides the signing of a pleading or a motion "constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . each allegation . . . in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(3) (West 2002). When a pleading is filed in violation of section 10.001, a trial court may order a party, its counsel, or both to pay all reasonable expenses, including attorney's fees, incurred by the movant because of the filing of the pleading. TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(c)(3).

Houser argues the evidence establishes that she made a reasonable inquiry into the Garcias' ownership of the property before suit was filed. In support of the motion for sanctions, Gloria called Houser to testify. Houser testified about her and her clients' investigation into their title prior to the lawsuit. Houser testified the Garcias had wanted to buy the property. They obtained an ownership and encumbrance report from a title company that stated record title to the land was in Salvador Yzaguirre by virtue of a 1940 recorded deed. Houser testified that Yzaguirre was deceased and she and her clients investigated the heirs of Mr. Yzaguirre. Houser testified she was

asked to prepare an affidavit of heirship "so [she was] were very careful and diligent to accurately represent the information that they provided, and . . . follow . . . the chain of title back for a number of years through that family . . . to Salvador Izaguirre [sic] who obtained . . . the property by deed in 1940, . . . ." They obtained a survey of the property and Houser prepared an affidavit of heirship that was signed by Yzaguirre's heirs and recorded in 2011. The heirs then conveyed the property by warranty deed to the Garcias.

Houser acknowledged that the four volumes of an abstract of title she filed contained gaps in tracing title prior to 1932, but she stated she believed the abstract did not need to go back further because she understood that to be the date of the common source from which Garcia was claiming title. Houser further testified, "[W]e are relying upon what the title company researched and . . . they gave me a professional response to our question of who owns the tract . . . . The title company said Salvador [Yzaguirre] did by virtue of these deeds that I provided . . . ." Houser stated, "[W]e were told by Emilia Izaguirre [sic] and my clients were told by her that she was the heir to the property" and "[t]he surveyor represented to us that he followed the documents of record in locating [the property]."

Gloria presented evidence of her attorney's fees and expenses. She testified that although her family owned the property for years, she never lived on it. She explained her grandfather "went into possession" of the property in the early 1950s and lived on the property, her uncle took over the property after her grandfather died, and her mother deeded the property to Gloria. Gloria testified she was not aware of a deed conveying a part of the property to Salvador Yzaguirre.

Iris Garcia testified she believed she owned the part of the tract that was sold to Salvador Yzaguirre because she had the title researched, had the property surveyed, purchased the property from Yzaguirre's heirs for $5,000, recorded the deed, and was paying taxes on the property. Iris testified she became aware Gloria was attempting to claim the land after the Garcias had purchased

it. She testified Gloria was very upset and Iris feared for her own safety. That is when she and her husband decided to seek relief through the legal system.

The record contains no evidence that when Houser filed the signed amended pleading, it was not to her best knowledge, information, and belief that the allegation of her clients' having title to the property would not have evidentiary support. It was undisputed that the Garcias purchased part of the larger tract for $5,000, conducted a title search confirming the seller had a good deed to the property, had a land survey of the property completed, used the property to access their home, and paid taxes on the property, and that Houser filed the pleadings at the Garcias' request. We hold this evidence establishes that Houser made a reasonable inquiry into the Garcia's ownership of the property.

Citing *Kilpatrick v. McKenzie*, 230 S.W.3d 207, 208 (Tex. App.—Houston [14th Dist.] 2006, no pet.), Gloria argues Houser's conduct is sanctionable because she was unable to produce legally sufficient evidence to prove her clients' claim to title. *Kilpatrick* was decided on legal sufficiency grounds and not the propriety of sanctions under chapter 10. It therefore does not stand for the proposition that a party may be sanctioned under chapter 10 for failing to present legally sufficient evidence of a claim. *Id.* Many parties in trespass to try title claims are unable to present legally sufficient evidence to support their claims, as was the case in *Kilpatrick*. The inability to present legally sufficient evidence alone does not demonstrate that a signatory has failed to make a reasonable inquiry before filing. *Gomer v. Davis*, 419 S.W.3d 470, 481 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Gloria also argues this case is similar to *Low v. Henry*, 221 S.W.3d 609 (Tex. 2007). In *Low*, the trial court's sanctions award was supported by evidence that when the attorney signed and filed the petition alleging medical malpractice, he had in his possession medical records that clearly disproved the defendants' involvement in the alleged malpractice. *Id.* at 616. In this case,

there is no evidence that when the case was filed, Houser had knowledge of or possession of any evidence that clearly disproved the Garcias' claim of title. Any gaps in the chain of title reflected in the abstract of title do not support the sanctions found in this case because the Garcias did not have the abstract of title when suit was filed and they were not required to produce one until and unless the defendant demanded one. *See Riner v. Neumann*, 353 S.W.3d 312, 315 (Tex. App.—Dallas 2011, no pet.) (citing TEX. R. CIV. P. 791-794).

## CONCLUSION

Because the record establishes Houser made a reasonable inquiry into the Garcias' ownership of the property, the trial court abused its discretion by awarding Gloria sanctions. *See Schlager*, 939 S.W.2d at 191. Therefore, we reverse the trial court's award of sanctions and render judgment that Gloria take nothing on her claim for sanctions. We affirm the remainder of the trial court's judgment dismissing the Garcias' claims without prejudice.

Luz Elena D. Chapa, Justice